DELLA WITTE, RESPONDENT, v. ODA L. SMITH, EXECUTOR OF THE ESTATE OF MARTHA J. SMITH, DECEASED, APPELLANT.—152 S. W. (2d) 661.

Springfield Court of Appeals, May 20, 1941.

Rehearing denied June 12, 1941.

640

*Francis M. Kinder* for appellant.

*David W. Hill* for respondent.

BLAIR, P. J.—Respondent will be referred to here as plaintiff and appellant will be referred to as defendant. Martha J. Smith (hereinafter referred to as the deceased), the mother of plaintiff and defendant and other children, died September 5, 1939, at the home of plaintiff. Deceased then had property to the value of about $24,000 and died testate, giving to her son Oda L. Smith (defendant) the sum of $4,000 and certain lands and to Della P. Witte (plaintiff), the sum of $4,000 and an automobile, and made other bequests in said will, not necessary to be noticed here. After payment of the specific bequests, the residue, if any, was given to plaintiff and defendant, as aforesaid, equally, share and share alike, and said son, Oda L. Smith, was appointed executor.

Said will was duly probated and, after paying said specific bequests, it seems to have been conceded that the residue of the estate was sufficient to pay plaintiff and defendant about $9,000 each, including the specific bequests, with each owing the estate of deceased a note for $1,000; the rate of interest only being in dispute.

Plaintiff filed an account in the Probate Court of Butler County against the estate of the deceased for board, nursing, care, etc., of deceased, and, on plaintiff being successful in the probate court, defendant appealed to the Circuit Court of Butler County, where plaintiff again prevailed and the jury returned the following verdict:

"We, the jury, find the issues in this cause for the plaintiff, Della Witte, and find that the amount due to her from the estate of her mother, after allowing all just set offs, in (is) the sum of ONE HUNDRED DOLLARS."

From this verdict, it appears that the jury, in its award to plaintiff, took into consideration the thousand dollar note concededly owing by her to the estate of deceased. The case seems to have been tried on this theory below. From the judgment entered on the above verdict, defendant was granted an appeal to this court.

There was evidence *pro* and *con* as to what sums of money and what goods deceased had turned over to plaintiff in her lifetime. This will not be gone into by us, as we regard the verdict of the jury, so far as justified, as settling all disputed questions of fact. There was no evidence of any express contract between the plaintiff and the deceased that such alleged board, care, nursing, etc., were to be paid for. There was evidence of certain statements from which the jury was authorized to find and infer that a contract to that effect existed. On the other hand, there was evidence tending to show that no such contract ever existed.

Appellant makes nine assignments of error in his brief. The first and second assignments deal with the admission and exclusion of evidence. Assignment III was as follows:

"The Court erred in refusing to set aside the verdict and granting (grant) a new trial, because the verdict and judgment was against the evidence and the greater weight and credibility thereof and against the law when applied to the evidence."

Assignment IV is as follows:

"The Court erred in refusing defendant's demurrer at the close of Plaintiff's case as offered by the defendant."

Assignment V is as follows:

"The Court erred in giving Plaintiff's 'Instruction No. 1,'" which Instruction No. 1 is as follows:

"The court instructs the jury, if you believe and find from the evidence in this cause, that plaintiff, Della Witte, furnished to her mother, Martha Smith, room, board and nursing, and then expected that she would be paid for such services out of the estate of her mother, and that the mother intended that her daughter should be paid for such services out of the estate of the mother after her death, and that the services so furnished after November 3, 1934, exceeded in value the amount of the set offs, then your verdict will be for the plaintiff, Della Witte, for the reasonable value of such services, less the total amount of the set offs (which includes the one thousand dollar note and interest and the four hogs stated in plaintiff's claim and described in evidence, and any other item which you find that the estate is entitled to credit) as shown by the evidence; on the other hand, if you find that the set offs exceed in value all such services, then your verdict will be for the defendant, the estate of Martha Smith, deceased, for the total value of the set offs, less the value of such services rendered by the plaintiff to her mother after November 4, 1934."

The trial court gave Instruction No. 2, as follows:

"The court instructs the jury that services rendered by one member of a family to another, such as nursing, board and attention during sickness, is presumed by law to be performed *gratis* and the burden is upon the claimant in this case to prove otherwise."

In Assignment V, the trial court is charged with error in giving Instruction No. 1 and in Assignment VI defendant (appellant here) complains of the refusal of instructions D-3 and D-4, which were as follows:

"INSTRUCTION D-3

"The Court instructs the jury that where the family relation exists, as in this case, there is no presumption as there is between strangers, that services rendered by one member to the other are to be paid for.

"Such services are the subject of contract and they can only be made the grounds of an action when they are rendered under a contract between the parties. Such contract may be express or implied,

but before an implication will arise it must be shown that there was a contractual intention and understanding between the parties and an expectation to pay by one and an expectation to receive pay by the other.

"The court further instructs the jury that an expectation to bestow a gratuity on the party performing services to another, where a family relation exists or to provide for him in a will and an expectation to receive a gratuity or to be provided for in a will does not establish a contract between the parties and no legal obligation results.

"Therefore, if you believe from the evidence in this case that claimant expected to receive any bequest, gift or reward and that deceased expected to bestow such bequest, gift or reward, but failed to do so in her lifetime, your verdict should be for the defendant for the reason that such facts do not establish a contract to pay either express or implied and that in order for it to amount to such contract, there must have been an intention and an expectation on the part of the deceased, Martha J. Smith, to pay during her lifetime and a purpose and intention on the part of claimant to charge and collect same during the lifetime of deceased."

"Instruction D-4.

"The court instructs the jury that if you find and believe from the evidence, that the deceased, Martha J. Smith, during her lifetime, intending to pay for her board and keep, made any bequests or furnished food, money or other valuable things to claimant, who accepted same as payment without disclosing to the deceased, that she intended or expected to ask more pay, your verdict must be for the defendant."

Assignment VII is as follows:

"The Court erred especially in permitting the plaintiff and her husband to testify in said cause and by permitting plaintiff to prove statements of deceased and denying defendant the right to introduce statements of deceased bearing upon the same subject matter."

Assignment VIII is that the trial court erred in overruling defendant's motion for new trial and Assignment IX is that the trial court erred in overruling defendant's motion in arrest of judgment. These assignments will be considered in their order.

Assignments I and II deal with the admission and exclusion of evidence. As appellant has not pointed out instances of such alleged error in his brief, we do not feel called upon to search the record, and rule these two assignments against appellant.

Assignment III was addressed solely to the trial judge, as the trial judge and the jury were the exclusive judges of the weight of the evidence.

As to Assignment IV, defendant thereafter offered evidence in his own behalf and waived the propriety of the refusal of his demurrer to plaintiff's evidence. Defendant did not ask a demurrer at the close of all the evidence and must be considered as waiving this assignment.

We have above set out Instruction No. 1, given by the trial court, and instructions D-3 and D-4, refused by the trial court, and will consider Assignments V and VI together. By Instruction No. 1 the trial court required the jury to find that plaintiff furnished to deceased room, board, nursing, etc., and then expected that plaintiff would be paid for such services and that deceased intended that plaintiff should be paid for such services out of deceased's estate after her death. It will be noted that the jury was only required to find an expectation to charge on the part of plaintiff, and an intention on the part of deceased to pay. Such instruction did not require the jury to find that any contract to pay for such services ever existed. Was that sufficient? That is the question we must decide. Would an expectation on one side and an intention on the other side amount to an enforceable contract?

Appellant cites Smith v. Davis Estate, 206 Mo. App. 446, 330 (230) S. W. 670. In that case the question was whether a contract existed between plaintiff and deceased to pay plaintiff, if he continued to work for deceased, and FARRINGTON, J., speaking for this court, said:

"The law is well settled that where one accepts valuable services or property from another, the law implies a promise to pay for the same, but that that presumption which justifies an implied contract does not exist where that service is performed by one from whom the family relation existing between the parties would raise the presumption that the services rendered were gratuitous."

After citing cases, Judge FARRINGTON further said:

"These cases, and the cases cited by respondent, all declare the law to be that before one who is a member of a family from whom there is a parental duty owing can recover for services rendered to such parent, there must be clear and convincing testimony to the effect that the services were rendered in pursuance to a contract, and that contract must be an expressed contract established by evidence from which it can be inferred that a contract was made by the terms of which the parent was bound to pay for the services, and the one rendering the same did so expecting to be remunerated therefor. If we read these cases correctly, there is never a recovery by a member of a family owing a duty on what is technically termed an implied contract in law, but as stated before, the recovery must be upon an express contract, or from evidence from which it can be reasonably concluded that there was a distinct understanding and agreement, understood an (and) acted upon between the parties, a contract established on inference rather than implication."

Appellant cites Mabary v. Mabary, 173 Mo. App. 437. We have read the Mabary case and feel that it sheds little light on the question involved. But that case cites Bircher v. Boemler, 204 Mo. 554, 562, 103 S. W. 40, also cited by appellant.

In the Bircher case, Division Two of our Supreme Court, speaking unanimously through BURGESS, J., said:

". . . the law presumes that services rendered by a daughter to her father are gratuitous, and, in the absence of an express promise of compensation for such services, plaintiff cannot recover. [Erhart v. Dietrich, 118 Mo. 418; Snyder v. Free, 114 Mo. 360; Morris v. Barnes, Admr., 35 Mo. 412; Hart v. Hart's Admr., 41 Mo. 441; Aull Savings Bank v. Aull's Admr., 80 Mo. 199.] As plaintiff's claim was for the care and maintenance of her father, it must necessarily have been based upon his express promise and undertaking to pay her therefor during his lifetime, and as the proof only showed a promise by him to provide her compensation by his last will, plaintiff is not entitled to recover." [Citing cases.]

We fail to find that the Bircher case has ever again been referred to on this point and certainly that case has never been overruled by the Supreme Court.

Respondent cites Balsano v. Madden, 138 S. W. (2d) 660. That was a suit by a woman for services to her brother-in-law. At the foot of column 2, page 663, BENNICK, Commissioner, said:

"Defendant next complains of the instruction because of its reference to the presumption existing in cases of implied contracts, that is, that where services are rendered by one person to another, an obligation to pay for the same will be presumed, *save for those instances where the relationship between the parties is such as to raise the presumption that the services are intended to be acts of gratuitous kindness.*" (Italics ours.)

Respondent next cities Mittendorf v. Koeller, 145 S. W. (2d) 470. It assists respondent not at all. Plaintiff there was a woman who alleged certain services to deceased in a suit against his estate, alleging an express contract that deceased was to pay her by a bequest in his will. He died without making such bequest in his will and the trial court erroneously held that the action was barred by the Statute of Limitations because the services were rendered more than five years before the suit was filed, although deceased's death did not occur until a few months, and less than five years before the suit was filed. The court held that the action was not barred by limitation.

In Brunnert v. Boeckmann, 226 Mo. App. 494, 258 S. W. 768, cited by respondent, the suit was by husband and wife for services rendered deceased who was a second cousin of the half-blood of the claimant husband. No family relationship existed between the deceased and the claimants, and they were permitted to recover on the implied contract to pay for services rendered to deceased.

The case of Wharton v. Denby, 222 Mo. App. 260, cited by respondent, was written by Judge FRANK when he was a Commissioner of the Kansas City Court of Appeals. In that case it is said:

"Where the family relation exists, the presumption is that the services are rendered gratuitously, and the burden is upon the claimant to show to the contrary." [Citing cases.]

That case does not help respondent, because it seems that there was no family relationship existing between the plaintiff and the deceased. The plaintiff was permitted to recover on the *quantum meruit*, on the ground of implied agreement to pay for the services rendered.

In Patrick v. Crank, 110 S. W. (2d) 381, cited by respondent, there was no family relationship and on that account it was held a recovery for services could be had.

In Ronsiek v. Boverschmidt, Adm'r., 63 Mo. App. 421, Judge BOND, speaking for the St. Louis Court of Appeals, said:

"The implied contract to pay arising from the rendition of service, which the law raises in transactions between strangers or persons not living in a family relation, is not inferable when the relationship between the parties is that of parent and child. [Erhart v. Dietrich, 118 Mo. 418.] In order to recover against the estate of her father in the present action, it was essential that plaintiff should give evidence tending to show an express or implied agreement on the part of the deceased to pay for the services rendered. [Hart v. Hart, 41 Mo. 441; Ramsey v. Hicks, 53 Mo. App. loc. cit. 195.]"

To the same effect is Ramsey v. Hicks, 53 Mo. App. 190, cited by respondent and also referred to by Judge BOND in the Ronsiek case. While it was sought in the latter case to set aside a judgment awarding a daughter compensation for taking care of her mother, on account of the alleged fraud in the procurement of such judgment, BIGGS, J., speaking for the St. Louis Court of Appeals, said:

"The trial court seems to have entertained the opinion that an agreement on the part of Mrs. Ramsey to pay for the services rendered, and of the defendants' intention to charge therefor, could only be established by positive proof. The rule is that the triers of the fact in such cases may, from the circumstances in evidence, infer a promise to pay and an intention to charge." [Citing cases.]

Here Instruction No. 1 required the jury only to find that plaintiff expected that she would be paid out of the estate of her mother and that the mother intended that her daughter should be paid for such services out of the estate of the mother after her death. While the remark of Judge BIGGS was probably *obiter* in the case where it was made, such remark does not help respondent at all, because it was there said that the triers of the fact could "infer a promise to pay." Here there is no requirement whatever that the jury should find any evidence of any meeting of the minds of the plaintiff and the deceased.

The case of Koch v. Hebel, 32 Mo. App. 103, cited by respondent, lends a little support possibly to respondent. That case was decided by the Kansas City Court of Appeals in 1888. Plaintiff there was a

daughter of deceased. The existence of a contract was held properly for the jury. Ramsey, J., said:

"After refusing a number of instructions asked by the defense, the court of its own motion gave the following instructions, numbered ten, eleven and twelve, to which defendant excepted:

"'10. Even if you find that plaintiff is entitled to recover, yet she can only recover for such services as were rendered by her after there was an understanding and agreement with her father that she was to receive wages for her services.'"

and in commenting on Instruction 10, just quoted, Ramsey, J., further said:

"The first instruction above set forth should have limited the amount of recovery to a sum not exceeding the value of the Holden property, in case the jury believe that the contract proved by plaintiff was that she was to receive said property for her services."

Lillard v. Wilson, 178 Mo. 145, 77 S. W. 74, recognizes the rule that a contract may be shown by circumstances. Marshall, J., in passing on the case, quoting approvingly, said:

"Touching the subject of services rendered by members of one family to each other, the same valuable work, at page 1083, says: 'Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise on the part of the recipient to pay for them; but where the services are rendered to each other by members of a family living as one household, there will be no such implication from the mere rendition and acceptance of the services. On the contrary, the presumption is that the services are intended to be gratuitous, and in order to recover therefor the plaintiff must affirmatively show either that an express contract for remuneration existed or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason for this is that the household family relationship is presumed to abound in reciprocal acts of kindness and good will which tends to mutual comfort and convenience of the family; and the rule stated applies not only to members of a family who are related by blood, but to those distinctly related, and to those who are in fact not related at all, provided they live together as members of one family.'

"But while this is the general rule, the same work at page 1084, says: 'The presumption that the services rendered by one member of a family to another were gratuitous is not a conclusive one. It may be overcome by showing an express agreement for payment, or by showing circumstances which will support the implication that the services were to be paid for. The burden is, of course, on the person rendering the services to overcome the presumption which the law raises that such services were rendered gratuitously.'"

In Allen v. Allen, 101 Mo. App. 676, relied on by respondent, the St. Louis Court of Appeals, speaking through Goode, J., said:

"The testimony is that James and Margaret Allen were induced to remain with and care for the old people, largely through sympathy and affection, but on the promise, too, that the homestead and eighty acres of land should be given to them."

So that, even if there were circumstances in that case pointing to the existence of a contract, there was also proof of an express contract to render the services for the homestead and eighty acres of land.

The case of Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 628, by the St. Louis Court of Appeals, comes nearer, in our opinion, than any other case cited by respondent to supporting the theory of plaintiff that a contract may be found by the jury from circumstances in evidence showing an expectation on the part of the child to receive and intention to pay on the part of the parent. In the Cole case, Judge GOODE, after reviewing all the cases, felt that a case was made for the jury and reversed the action of the trial court and remanded that case for trial by a jury, *if such jury found from the evidence that an actual agreement to pay had been made.*

But we regard the case of Bircher v. Boemler, *supra,* as being the last expression of our Supreme Court on the subject and feel that it is our duty to follow it, rather than the reasoning of Judge GOODE in the Cole case, just referred to, if that case announces a contrary doctrine. We regard the quoted statements of deceased as showing the possible existence of a contract; but the jury was not required to find more than an expectation on the part of the plaintiff to be paid and an intention on the part of deceased to pay therefor. That seems not to be enough under the controlling decision of the Supreme Court. The jury must at least have found from all the circumstances in evidence that a contract existed between plaintiff and her mother to pay for the mother's room, nursing, board, etc. We must hold therefore, that the jury must find, from the circumstances, that a *contract* to pay existed, and, for that reason, we are compelled to hold the giving of Instruction No. 1, at the request of plaintiff and over the objection and exception of defendant, was error.

What we have said is largely embodied in Instruction D-3, asked by appellant, and refused by the trial court, and in view of what we have said, we believe that Instruction D-3 should have been given.

We doubt if there was any evidence to support refused Instruction D-4, and feel that the trial court should not be convicted of error in its refusal.

Under Section 1892, Revised Statutes Missouri, 1939, plaintiff's husband was a competent witness in the case, and no objection to his competency could be successfully urged on that ground. In view of our opinion as to Instruction No. 1, we do not feel called upon to consider Assignments VIII and IX.

For error in giving Instruction No. 1, and the trial court's refusal of Instruction D-3, the judgment below must be reversed and the cause remanded for new trial. It is so ordered. *Smith* and *Fulbright, JJ.,* concur.